UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 169,<br><br>Applicant/Counter-Respondent,<br><br>v.<br><br>THE PENTA BUILDING GROUP, INC.,<br><br>Respondent/Counter-Claimaint. | Case No. 3:19-cv-00401-MMD-CLB<br><br>ORDER |

## I. SUMMARY

This case concerns an agreement subject to section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.SC. § 159. Applicant/Counter-Respondent Laborers' International Union of North America, Local 169 ("Union") has filed an application to confirm an award entered by Arbitrator John M. Caraway ("Arbitrator") on May 31, 2019 ("Award"). (ECF Nos. 1, 8-2.) Respondent/Counter-Claimant The Penta Building Group, Inc. ("Penta") moves to vacate the award ("Motion"). (ECF No. 14.) Finding no basis for vacatur, the Court will deny the Motion and confirm the Award.

## II. BACKGROUND

The material underlying facts of this matter are not in dispute.

The Motion stems from Penta's belief that confirmation of the Award would unlawfully force it to recognize the Union. (*E.g.*, ECF No. 14 at 2.) As relevant to this Motion, the parties had a collective bargaining agreement between the Nevada Chapter of Associated General Contractors of America Inc. ("AGC") and Laborers International Union of North America, A.F.L.-C.I.O. ("LMA"). (ECF No. 2 at 2; *see also* ECF No. 6-1 at 11.) The LMA had an effective date of July 16, 2015, through and including July 15, 2018.

///

(ECF No. 2 at 2; ECF No. 6-1 at 8.) It appears that Penta was only one of various employers bound by the LMA through the AGC.

On May 2, 2018, Penta served notice upon the Union to terminate the LMA, as to it, pursuant to section 39 of LMA then in effect ("May 2nd Notice"). (ECF No. 8-2 at 2; ECF No. 14 at 107.) Later the same month—on May 11, the Union gave notice that it wished to open multi-employer negotiations for a successor agreement to the LMA. (ECF No. 8-2 at 6.) On May 22, 2018, the Union specifically responded to Penta's May 2nd Notice, contending that such notice was deficient and not in compliance with the requirements of the LMA. (ECF No. 14 at 110.)

In a letter dated June 12, 2018, Penta informed the Union of Penta's belief that it was entitled to withdraw recognition of the Union because Penta "no longer has any employees in a bargaining unit represented by [the Union]." (*Id.* at 112.) In the same letter, Penta offered to meet and confer regarding a "new contract," albeit suggesting that the Union may determine that such is "not appropriate" given that Penta employed no Union-represented individuals at the time. (*Id.*) Penta also maintained that it was not waiving its asserted right to withdraw recognition of the Union by its offer to meet and confer. (*Id.*) A few days later, the Union rejected Penta's offer to meet and confer or to discuss Penta's potential withdrawal, providing that the offer was untimely and noting that Penta continued to ignore the notice requirements in the LMA. (*Id.* at 116–17.) Penta gave notice to the Union that it was withdrawing its recognition of the Union on June 22, 2018. (*Id.* at 119–20.) On July 3, 2018, the Union filed a grievance regarding Penta's May 2nd Notice and formalizing its contention that the notice was deficient and did not comply with the LMA. (*Id.* at 122–23.) The parties ultimately decided to arbitrate whether Penta had complied with the LMA, although Penta otherwise maintained that it lawfully withdrew recognition of the Union. (ECF No. 8-2 at 3; ECF No. 14 at 125–26.)

The parties participated in an arbitration hearing on January 22, 2019. (ECF No. 8-2 at 3.) The Arbitrator was specifically authorized to decide the following: "Was Penta's notice deficient and not in compliance with he terms of [the LMA]? If not, what shall be the

appropriate remedy?" (*Id.* at 3–4.) The Arbitrator found for the Union and concluded that Penta was effectively bound to a successor agreement that had been reached. (*Id.* at 9.) The Union filed to confirm the Award on July 17, 2019 (ECF No. 1 at 1) and Penta thereafter filed the instant Motion (ECF No. 14).

## III. LEGAL STANDARD

Review of an arbitration award is "both limited and highly deferential". *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). Upon application for confirmation of an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C. § 9. "The Federal Arbitration Act enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Kyocera Corp. v. Prudential–Bache Trade Serv. Inc.*, 341 F.3d 987, 994 (9th Cir. 2003) (internal citations omitted). Among other things and as relevant here, vacatur is permitted "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An arbitrator exceeds his powers "not when [he] merely interpret[s] or appl[ies] the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Kyocera*, 341 F.3d at 997 (internal citations omitted). However, "if, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *McKesson Corp. v. Local 150 IBT*, 969 F.2d 831, 833 (9th Cir. 1992).

## IV. DISCUSSION

On the face of the Motion, Penta argues that the Award should be vacated particularly because: (1) the Arbitrator exceeded the boundaries of the issues submitted to him; (2) for that reason, the Award is contrary to public policy; and/or (3) for the same reason, the Arbitrator showed manifest disregard for the law. (ECF No. 14 at 10.) The underlying basis for Penta's Motion, however, is its claim that National Labor Relations Board ("NLRB") law permitted it to unilaterally withdraw its recognition of the Union under

3

the one-employee exception, thereby repudiating the LMA. (*E.g.*, *id.* at 2, 16–17.) As to this withdrawal issue, Penta further argues that the Arbitrator lacked jurisdiction, contending the Union failed to timely challenge Penta's purported unilateral withdrawal and that that is an issue for the NRLB to decide. (*Id.* at 9–10; ECF No. 28 at 6 n.7.) The Court finds that the Arbitrator's ruling granting the Award was within the bounds of his authority and the LMA.

**A.     Timeliness**

As to the threshold issue of timeliness, the Arbitrator appears to have concluded that the Union's grievance of the May 2nd Notice was timely under a continuing violation theory[1] and because the Arbitrator concluded that Penta did not properly/clearly repudiate the LMA. (ECF No. 8-2 at 6–7.) Penta does not challenge the Arbitrator's specific timeliness finding and, in light of the Court's conclusion *infra*, whether the Union discretely grieved the unilateral withdrawal is a moot point. That is to say that the issue regarding whether the Union grieved (or timely grieved) the specific unilateral withdrawal issue is apparently subsumed in the Arbitrator's determination that the Union's July 3 grievance of the May 2nd Notice was timely, considering the Arbitrator's ultimate ruling. The Court now addresses that ruling.

**B.     Merits**

The Arbitrator concluded that Penta's May 2nd Notice to terminate the LMA failed to comply with the terms of the LMA. (ECF No. 8-2 at 7–9.) Penta concedes that the Arbitrator's award should be confirmed to the extent of this determination. (*E.g.*, No. 14 at 20 ("Penta does not challenge the ruling that its May 2nd Notice did not comply with the LMA.").) Penta's position appears to be that the Arbitrator should have stopped there and

///

---

[1] *See, e.g., Al Bryant, Inc.*, 260 NLRB 10, 12 (1982) (explaining that under a continuing violation theory, an employer is not absolved of a continuing violation which inured from its continuing failure to abide by a collective bargaining agreement), *overruled in some aspects by A&L Underground and Plumbers Local Union No. 8 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of USA and Canada, AFL-CIO*, 302 NLRB No. 467, 468 (1991) ("[W]e have concluded that the continuing violation theory as defined and applied in *Al Bryant* cannot properly apply *to a clear and total contract repudiation.*") (emphasis added).

4

said nothing more. In fact, as an alternative to vacating the Award, Penta proposes that the Award be confirmed subject to its withdrawal of recognition. (*Id.*) The Court cannot agree with this alternative.

Here, upon finding that Penta failed to comply with the terms of the LMA, the Arbitrator concluded that the consequences for Penta's noncompliance is that Penta's June 12 offer to negotiate was rendered invalid and its June 22 withdrawal was nullified. (ECF No. 8-2 at 8.) Penta contends that the Arbitrator was not authorized to make these determinations and that the Arbitrator's statements amounted to dicta. (*E.g.*, ECF No. 14 at 10–11, 19.) The Union argues that these determinations fell within the scope of the second question the Arbitrator decided: "If not, what shall be the appropriate remedy?" (ECF No. 27 at 13–14).

To be sure, the Arbitrator did not expressly address the specifics of Penta's contention here—that it was entitled to unilaterally withdraw its recognition of the Union based on NLRB caselaw.[2] (*E.g.*, ECF No. 14 at 16–17.) Instead, as noted, the Arbitrator *read the LMA to*: (1) nullify any such withdrawal by virtue of Penta's noncompliance and (2) expressly waive the possibility of such withdrawal.

As to the first finding, section 39 of the LMA (ECF No. 6-1 at 8–11) provides:

///

---

[2]As indicated, this is Penta's key argument (*see generally* ECF Nos. 14, 28), which this Court concludes is not supported by caselaw. Contrary to Penta's position and as the Union argues, no authority supports that the relied upon unilateral withdrawal rule applies to cases involving section 9(a) of the NLRA—as opposed to section 8 (*see, e.g.*, ECF No. 27 at 17). In fact, after the Union pointed this out in its response (*id.*) Penta seemingly *misleads* the Court, contending that *D&B Masonry*, 275 NLRB 1403 (1985) and *Int'l Transp. Serv., Inc. v. NLRB*, 449 F.3d 160, 164 (D.C. Cir. 2006) support that the unilateral withdrawal rule also applies in section 9(a) cases. (*See* ECF No. 28 at 4–5.) These cases offer no such support. Both cases involve section 8 of the NLRA. *See, e.g., D&B Masonry*, 275 NLRB at 1409 (citations omitted) ("It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating *Section 8(a)(5) of the Act*, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.") (emphasis added); *Int'l Transp. Serv., Inc.* 449 F.3d at 161 ("International Transportation Service, Inc. ("ITS") petitions for review of a [NLRA] order finding it in violation of *Section 8(a)(3) and (1)* of the National Labor Relations Act . . . ..") (emphasis added). The Court found no case that applied the unilateral withdrawal rule/one-employee exception to a section 9(a) case.

> Any Employer . . . that chooses not to provide written notice or otherwise fails to provide written notice to the Union, as specified in the first paragraph of this section and/or chooses not to participate or otherwise fails to participate in any negotiation process available to them under [the LMA] . . hereby agrees . . . that it has engaged in a distinct affirmative act to recommit to the Union that it *will be bound to the terms of any Agreement reached* in negotiations with the Employer(s) that bargain in accordance with [the LMA].

(*Id.* at 9 (emphasis added).) Notably, the first paragraph of section 39 provides that the LMA continued through the end of its term unless entities bound by it gave notice in accordance with its terms to, among other things, terminate the LMA "not more than" 90 days "nor less than" 60 days before July 15. (*Id.* at 8.) This supports the Union's rejection of Penta's June 12 letter offering to meet and confer for untimeliness, noted *supra*. As to the second finding, section 39 states that an employer "waives" its right to "terminate, abrogate, repudiate, or cancel" the LMA during its terms or to "file or process any petition before the [NLRB] seeking such . . . ." (*Id.* at 9.)

The Arbitrator determined that in light of this language Penta expressly agreed to be bound by "whatever agreement was struck in the multi-employer negotiations" and expressly waived any ability to petition the NLRB regarding withdrawal of recognition. (ECF No. 8-2 at 8–9.) Applying the relevant legal standard explained *supra*, the Court finds that the Arbitrator's decision was reasonably drawn from the essence of the LMA and is thus not completely irrational or contravenes the law—particularly Penta's unilateral withdrawal contention, see *supra* footnote 2. The Award necessitates a conclusion that the issue of withdrawal was inextricably intertwined with the Arbitrator's determination as to whether Penta failed to comply with the terms of the LMA and the remedy for such noncompliance. For these reasons, the Court concludes that the Arbitrator did not exceed the bounds of his authority and Penta's ancillary arguments thereby fail.

In sum, this Court concludes that there is no basis to vacate the Award and will deny the Motion. The Award is accordingly confirmed.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Respondent/Counter-Claimant The Penta Building Group, Inc.'s motion to vacate (ECF No. 14) is denied. The Court confirms Arbitrator John M. Caraway's May 31, 2019 award to Applicant/Counter-Respondent Laborers' International Union of North America, Local 169.

The Clerk is directed to enter judgment in accordance with this order and close this case.

DATED THIS 27th day of January 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE